1

2        IN THE UNITED STATES DISTRICT COURT

3        FOR THE NORTHERN DISTRICT OF CALIFORNIA

4

5  PATRICK SCOTT,

6                                      No. C-13-0245 TEH (PR)
              Petitioner,

7
       v.                             ORDER GRANTING RESPONDENT'S
8                                     MOTION TO DISMISS; DENYING
   RICK M. HILL, Warden,              CERTIFICATE OF APPEALABILITY
9
              Respondent.             Document Nos. 9, 14.
10 _____/

11

12        Petitioner Patrick Scott, a state prisoner incarcerated at

13 Folsom State Prison, has filed a pro se Petition for a Writ of

14 Habeas Corpus under 28 U.S.C. § 2254 challenging a judgment of

15 conviction from Alameda County Superior Court asserting the claims

16 of (1) actual innocence based upon newly discovered exculpatory

17 evidence and (2) prosecutorial misconduct for failing to disclose

18 the exculpatory evidence.  Doc. #1.  Respondent has filed a motion

19 to dismiss the petition as untimely under 28 U.S.C. § 2244(d) and as

20 procedurally defaulted.  Petitioner filed an opposition and

21 Respondent has filed a reply.  Petitioner has also filed a motion

22 for discovery and for appointment of counsel.  For the reasons

23 stated below, Respondent's motion to dismiss is GRANTED and

24 Petitioner's motion is DENIED.

25                                I

26        Following a jury trial in Alameda County in 1992,

27 Petitioner was convicted of one count of second degree murder, two

28 counts of attempted murder, and a true finding that he was armed

1   with a firearm during the commission of the offenses and that he

2   personally used a firearm.  Resp.'s Ex. A, Court Transcript (CT) at

3   688-90.  Petitioner was sentenced to state prison for a total term

4   of twenty-six years, four months to life.  CT at 786.

5          On May 11, 1993, the California Court of Appeal affirmed

6   the judgment of conviction.  Resp.'s Ex. C.  In April 1997,

7   Petitioner filed a petition for a writ of habeas corpus in the

8   Alameda County Superior Court, asserting claims not relevant to this

9   federal petition, which was denied on August 25, 1997.  Petitioner

10  filed the same petition in the Court of Appeal, which was summarily

11  denied on January 8, 1998.  The California Supreme Court summarily

12  denied the petition on May 27, 1998.  Resp.'s Ex. D.

13         On November 19, 1999 and December 22, 1999, Petitioner

14  filed two more habeas petitions in the California Supreme Court

15  again on grounds not relevant to this petition.  Resp.'s Ex. E.  On

16  January 25, 2000, the California Supreme Court summarily denied both

17  petitions.  Resp.'s Ex. F.

18         On April 29, 2009, Petitioner, represented by attorney

19  A.J. Kutchins, filed a state habeas petition in Alameda County

20  Superior Court in which one of the claims asserted was the actual

21  innocence claim he asserts in this federal petition.  Resp.'s Ex. G,

22  June 3, 2010 Petition to California Supreme Court at 13.  In an

23  unpublished written decision, the Superior Court denied the petition

24  as untimely, stating:

25         Petitioner failed to show justification for the
            substantial delay in seeking habeas relief, and the
26         Petition is therefore untimely.  And because Petitioner
            has not demonstrated that his claims fall within an
27         exception to the untimeliness bar, it is procedurally

28                                    **2**

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

barred, and is therefore denied as untimely.
Ex. G. to June 3, 2010 California Supreme Court petition, <u>In re Patrick Scott</u>, No. 103500B (Ala. Co. Sup. Ct. Feb. 8, 2010) at 5.

Petitioner filed the same petition in the Court of Appeal, which was denied as untimely on April 29, 2010. Ex. H to June 3, 2010 California Supreme Court petition. The California Supreme Court denied this petition on February 23, 2011, citing <u>In re Robbins</u>, 18 Cal. 4th 770, 780 (1998).[1] Resp.'s Exs. G, H.

On July 6, 2012, Petitioner filed a <u>pro se</u> habeas petition in the California Supreme Court, asserting the two claims he asserts in this federal petition. Resp's Ex. I. On November 20, 2012, the Supreme Court denied the petition, citing <u>Robbins</u> and <u>In re Clark</u>, 5 Cal. 4th 750 (1993).[2] Resp.'s Ex. J. Petitioner filed the instant federal petition on January 17, 2013. Doc. #1.

II

The record does not include a state court opinion that provides a summary of facts pertaining to Petitioner's trial. The Court relies on the facts provided by Respondent in his motion to dismiss and by Petitioner in his June 3, 2010 petition to the California Supreme Court, which are, for the most part, not in dispute.

On November 20, 1989, Petitioner and three friends-- Talmadge Bates, Dale Hodges and Patrick Weaver--armed themselves with weapons and went looking for Derlin Hines. They intended to

---

[1] <u>In re Robbins</u>, 18 Cal 4th 770 (1998) addresses timeliness of state habeas petitions.

[2] <u>In re Clark</u>, 5 Cal. 4th 750 (1993) addresses successive and delayed petitions.

get back at Hines for acts of violence they believed Hines had committed against themselves and their friends.  Petitioner initially told police that they were "out to get" Hines, but later told police and testified at trial that they were just going to talk to him.  They took two cars.  Petitioner drove a rented gray Toyota, accompanied by Hodges and Weaver; Bates drove separately in a 1977 gray Pontiac.  Hodges was armed with a semi-automatic pump shotgun; Petitioner had a .357 revolver; Weaver was wearing a bullet-proof vest.  It was alleged that Bates had an AK-47, which was recovered in the yard where Petitioner was later apprehended.

At the intersection of Martin Luther King and 29th Street in Oakland, Petitioner and his companions saw a Cadillac, which they believed was one of Hines' cars.  They followed the Cadillac.  The three cars entered a tunnel under the freeway.  A barrage of gunfire was heard by the victims.  The Cadillac crashed into the side of the tunnel, the Pontiac, driven by Bates, hit the Cadillac from the rear, and Petitioner's Toyota crashed into a parked car.  The gunfire continued after the vehicles collided.

There were three people in the Cadillac, none of whom were Hines, and none of whom was armed.  All three were hit by multiple gunshots.  Aloma Ewing and Marquis Scott were injured.  Sharea Stafford was killed.

Petitioner and his companions fled the scene.  Three of them were apprehended soon after the incident, hiding in back yards a few blocks away.  Hodges eluded pursuit and was not apprehended until several months later.

Along the route taken by Petitioner and his companions,

4

United States District Court
For the Northern District of California

police found a Barretta .380 semi-automatic pistol, a 12-gauge shotgun and an AK-47 rifle. A .38 caliber special revolver was found on the floor of the car driven by Bates. The following day, Petitioner led police to his .357 magnum revolver, which was buried under some dirt in a planter box not far from the place where he was arrested. In all, five guns were recovered.

Four of the six bullets in the .357 had been fired. The 12-gauge shotgun was loaded and one round had been expended. The AK-47 rifle was loaded, one bullet was in the chamber and twelve bullets were in the magazine. An AK-47 rifle's magazine holds approximately thirty to forty bullets. Based on the number of bullets found in the rifle and the thirty-eight expended AK-47 bullets found at the scene, either two magazines were used or there was more than one AK-47. All of the guns, except the automatic pistol which was jammed and could not be examined, contained live ammunition.

Examination of the bullet evidence found at the scene of the shooting established that more than forty shots had been fired by either one or two AK-47's. Approximately a dozen bullets recovered from the scene were positively identified as having been fired from the AK-47 rifle found where Petitioner and the others were apprehended. Several bullet fragments appeared to have been fired from the same AK-47, but because only fragments were collected, the examiner did not have the same degree of certainty about the match. Examination of a bullet fragment recovered from Ms. Stafford's body suggested it had been fired from an AK-47, although the evidence was insufficient to establish it came from the

1   rifle found by the police.

2           Prints found at the scene matched those of Petitioner,
3   Bates and Weaver.  A gunshot residue test of Petitioner,
4   administered after his arrest, revealed the presence of gunshot
5   residue on his left hand.  Petitioner is left-handed.  Petitioner
6   told police that, after he crashed his car, he fired once or twice
7   at the Cadillac.  None of the evidence showed that any of the
8   injuries sustained by the victims were caused by Petitioner's
9   revolver.

10          Petitioner and his companions told the police that, as
11  they entered the tunnel, a large dark sports utility vehicle (SUV),
12  either a Chevy Blazer or Ford Bronco, followed hard behind them.
13  While they were in the tunnel, the SUV pulled up alongside their
14  cars and one of its passengers began firing an automatic weapon.
15  After they crashed their cars, they got out and began firing their
16  weapons in an attempt to cover themselves as they ran away.  The two
17  surviving victims provided evidence that an SUV was at the scene.
18  Another witness saw a "camper/Blazer type vehicle" drive past
19  Petitioner and his companions as they ran away from the scene and
20  heard gunshots and saw muzzle flashes coming from the SUV as it
21  drove off.

22          Petitioner's defense had several prongs.  Petitioner
23  testified that Hines was responsible for a number of acts of
24  violence directed at him and his friends, and that efforts to
25  resolve the situation without violence had failed.  However, he
26  testified that, on the night of the shooting, he was going to visit
27  the mother of his child and his friends accompanied him to ensure

28

his safety if he happened to see Hines.  Petitioner admitted that he and his friends were following the Cadillac, thinking that Hines was in it, but denied that they attacked the people in the Cadillac.  He testified that the attack was carried out by one or more gunmen who happened upon them as they were tailing the Cadillac, and that they were the intended targets of those assailants, or were simply caught in the middle of an attack directed at the Cadillac by those other parties.

On direct and cross-examination, Petitioner admitted that he met up with more people than just Bates, Weaver and Hodges that night.  He denied that he met them with a specific plan in mind.  However, he was impeached with his prior statement to police that he had met with people to decide what to do about Hines.  He was also impeached with the fact that he never mentioned to the police that he was going to see his girlfriend that night.  He had told the police, "Last night, the four of us had the mind to get him [Hines]."  Petitioner was also impeached with his statement to police that he had fired at the Cadillac that night.

In his June 3, 2010 petition to the California Supreme Court, Petitioner indicated that, in the mid-2000's he "happened upon" new evidence, including evidence of a ballistics test that established that the AK-47 found by police was not the gun that fired the bullet fragments recovered from Ms. Stafford's body.  June 3, 2010 Petition to California Supreme Court at 9.  With his petition to the California Supreme Court, Petitioner submitted the declaration of Roger Patton, the attorney who represented one of Petitioner's companions, Talmadge Bates.  Ex. C to 2010 Petition,

**United States District Court**
For the Northern District of California

**7**

Declaration of Roger Patton (Patton Dec.).  Mr. Patton declared,

> Around the time Mr. Bates' trial began (and after Patrick
> Scott had been convicted), we received the results of a
> ballistics test that I had arranged to be performed on the
> gun that bore Mr. Bates' fingerprints.  That test showed
> conclusively that the AK-47 rifle found at the scene with
> Mr. Bates was not the weapon that fired the fatal shots.
> On the basis of this new evidence, we reopened plea
> negotiations with the prosecutor, Alameda Deputy District
> Attorney William Denny.  Mr. Denny offered Mr. Bates the
> opportunity to plead guilty to voluntary manslaughter.
> Mr. Denny made it clear that his willingness to accept
> that lesser plea was a direct result of the ballistics
> test which, he indicated, had significantly weakened his
> case.  I have reviewed my (stored) files of the Talmadge
> Bates case.  Unfortunately, it appears that, during the
> intervening years, the files were stripped and the
> ballistics test results were discarded.

Patton Dec. at 1.

### III

In this federal petition, Petitioner asserts the following claims: (1) Petitioner is factually innocent of the charges of aiding and abetting co-defendant Bates for one count of murder and two counts of attempted murder by usage of an AK-47 rifle because new evidence shows that the AK-47 was not the weapon used in the shooting of the three victims; and (2) the prosecution's failure to disclose the exculpatory evidence establishing that the AK-47 rifle was not used in the shooting incident constituted a violation of Brady v. Maryland, 373 U.S. 83 (1963).  Respondent argues that the petition must be dismissed because it is untimely and equitable tolling does not apply and because it is procedurally defaulted based on the fact that it was denied as untimely by the California state courts.  Petitioner argues that his petition is timely because he is entitled to equitable tolling and that the state procedural bar does not apply.

**A**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which became law on April 24, 1996, imposed for the first time a statute of limitations on petitions for a writ of habeas corpus filed by state prisoners.  Petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the latest of the date on which:  (A) the judgment became final after the conclusion of direct review or the time passed for seeking direct review; (B) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented the petitioner from filing; (C) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (D) the factual predicate of the claim could have been discovered through the exercise of due diligence.  28 U.S.C. § 2244(d)(1).  Time during which a properly filed application for state post-conviction or other collateral review is pending is excluded from the one-year time limit.  Id. § 2244(d)(2).  The one-year period generally will run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).

Petitioner concedes that he filed his federal petition beyond the one-year limitations period provided in § 2244(d)(1)(A), but argues that his petition is timely under §§ 2244(d)(1)(B) and (d)(1)(D).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1

**1**

2    Under § 2244(d)(1)(B), Petitioner argues that a state

3 impediment was created by the <u>Brady</u> violation because, until 2005,

4 he had no knowledge of the ballistics test that would establish his

5 innocence.[3]  Because his 2013 federal petition was filed beyond the

6 one-year limitations period even using 2005 as the date the

7 limitations period began to run, Petitioner also argues that he is

8 entitled to equitable tolling after his discovery of the ballistics

9 test based on the ineffectiveness of counsel he hired who failed to

10 present Petitioner's <u>Brady</u> claim or raise any federal arguments in

11 his state habeas petition.

12    Section 2244(d)(1)(B) does not apply under the

13 circumstances of this case.  The few cases applying § 2244(d)(1)(B)

14 "have dealt almost entirely with the conduct of prison officials who

15 interfere with inmates' ability to prepare and to file habeas

16 petitions by denying access to legal materials."  <u>Shannon v.</u>

17 <u>Newland</u>, 410 F.3d 1083, 1087-88 (9th Cir. 2005) (rejecting claim

18 that unfavorable state appellate opinion was an "impediment" to

19 petitioner's filing a habeas petition).  For example, a petitioner's

20

21    [3]In his petition, Petitioner states that he became aware of the
ballistics test in 2005.  Petition at ¶ 41.  However, in his
22 declaration submitted with his petition, Petitioner states, "Between
2007 and 2008, is when I first became aware of the 'new ballistics
23 evidence' during [attorney] Mr. Kutchins' investigation of my case."
Petition, Ex. H, Scott Dec. at 2.  In his reply, Petitioner clarifies
24 that he first learned of the ballistics test from Mr. Kutchins'
December 30, 2007 letter but, because he did not know when Mr.
25 Kutchins discovered the test, in his petition, he used 2005 as the
date he became aware of the test.  Reply at 9, n.1.  Because 2005 is
26 the date Petitioner uses in his petition, the Court will also use 2005
as the year in which Petitioner became aware of the ballistics test.
27 However, even if Petitioner became aware of the test in 2007, the
petition would still be untimely.

28

United States District Court

For the Northern District of California

inability to access information about the statute of limitations deadline may constitute an impediment to the filing of an application.  Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc).  Furthermore, to delay the commencement of the limitations period under § 2244(d)(1)(B), the petitioner must show a causal connection between the unlawful impediment and his failure to file a timely habeas petition.  Bryant v. Arizona Attorney General, 499 F.3d 1056, 1060 (9th Cir. 2007) (where petitioner did not know about AEDPA's statute of limitations, his lack of access to case law interpreting the statute of limitations was not impediment under § 2244(d)(1)(B) because it was petitioner's lack of knowledge of statute of limitations, and not his lack of access to case law, that caused him to delay filing); see Randle v. Crawford, 604 F.3d 1047, 1054-55, 1057 (9th Cir. 2010) (finding no impediment to filing petition under § 2244(d)(1)(B) due to petitioner's state-appointed counsel's failure to perfect a timely direct appeal or delay in providing petitioner his legal papers because these actions did not prevent petitioner from filing a federal petition).

Petitioner's argument rests on the fact that the prosecutor's Brady violation constituted unlawful state action that impeded his ability to file a habeas petition.[4]  Unfortunately for Petitioner, there is no Brady violation here.

The prosecutor's requirement to disclose exculpatory evidence to a defendant does not continue after the defendant is

---

[4]Brady established that due process requires a prosecutor to disclose material exculpatory evidence to the defendant before trial. District Attorney's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52, 68 (2009).

convicted and the case is closed.  **District Attorney's Office for**

**Third Judicial Dist. v. Osborne**, 557 U.S. 52, 68 (2009).  In

**Osborne**, the Supreme Court explained:

> A criminal defendant proved guilty after a fair trial does
> not have the same liberty interests as a free man.  At
> trial, the defendant is presumed innocent and may demand
> that the government prove its case beyond a reasonable
> doubt.  But, '[o]nce a defendant has been afforded a fair
> trial and convicted of the offense for which he was
> charged, the presumption of innocence disappears.'. . .
> Osborne's right to due process is not parallel to a trial
> right, but rather must be analyzed in light of the fact
> that he has already been found guilty at a fair trial, and
> has only a limited interest in postconviction relief.
> Brady is the wrong framework.

Id. at 69 (citations omitted).

It is undisputed that the ballistics test at issue was

conducted after Petitioner's conviction was final and before

September 1995, when Petitioner's former co-defendant entered a

negotiated plea to manslaughter.  See Patton Dec. at 1.  The

prosecutor could not have committed a Brady violation during

Petitioner's trial by not disclosing the ballistics test to

Petitioner, because the ballistics test did not exist at that time.

After the trial, the prosecutor had no obligation to disclose such

information.  Without the Brady violation, Petitioner can point to

no unconstitutional state action that prevented him from filing a

petition.  Therefore, § 2244(d)(1)(B) is inapplicable and Petitioner

cannot rely on it to establish that his petition is timely.

2

Petitioner's argument under § 2244(d)(1)(D) also fails.

Under § 2244(d)(1)(D), the one-year limitation period

starts on the date on which "the factual predicate of the claim or

United States District Court
For the Northern District of California

1   claims presented could have been discovered through the exercise of

2   due diligence." The time begins "'when the prisoner knows (or

3   through diligence could discover) the important facts, not when the

4   prisoner recognizes their legal significance.'" Hasan v. Galaza,

5   254 F.3d 1150, 1154 n.3 (9th Cir. 2001). "Due diligence does not

6   require the maximum feasible diligence, but it does require

7   reasonable diligence in the circumstances." Ford v. Gonzalez, 683

8   F.3d 1230, 1235 (9th Cir. 2012) (internal quotations and citations

9   omitted).

10   Petitioner again relies on the fact that the Brady

11   violation prevented him from discovering the factual predicate of

12   his claim until 2005. As discussed above, there was no Brady

13   violation here. However, even giving Petitioner the benefit of the

14   doubt and assuming that he first became aware of the ballistics test

15   in 2005, his petition is still untimely. Petitioner had one year

16   from 2005 in which to file the instant petition. Petitioner did not

17   file the instant petition until 2013. Thus, absent tolling, the

18   statute of limitations elapsed by the end of 2006.

19   Petitioner is not entitled to statutory tolling because he

20   did not file a state petition until 2009, years after the statute

21   expired. See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir.

22   2003) (state petition filed after expiration of one-year period

23   established in § 2244 does not reinitiate the limitations period).

24   Thus, absent equitable tolling, this petition is untimely. As

25   discussed below, equitable tolling does not apply.

26                                    3

27   Equitable tolling requires that the petitioner establish

28                                   13

United States District Court

For the Northern District of California

two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." Bryant, 499 F.3d at 1061 (citation omitted); Holland v. Florida, 130 S. Ct. 2549, 2562 (2010).  The petitioner bears the burden of showing that this "extraordinary exclusion" should apply to him. Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002).  The petitioner also must show that "the extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time." Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009) (internal quotation marks and citations omitted).  Where a prisoner fails to show "any causal connection" between the grounds upon which he asserts a right to equitable tolling and his inability to timely file a federal habeas application, the equitable tolling claim will be denied.  Gaston, 417 F.3d at 1034-35.  He must, furthermore, show that his untimeliness was caused by an external impediment and not by his own lack of diligence.  Bryant, 499 F.3d at 1061 (no equitable tolling where petitioner was not diligent in that he failed to seek any state court relief for six years, or to take advantage of available paralegal assistance).

Petitioner argues that extraordinary circumstances were caused by his habeas counsel's ineffective assistance for failing to include a federal constitutional claim in his 2009 state habeas petition, thus causing Petitioner to file a pro se state petition asserting his Brady claim.  Although in some cases, ineffective assistance of counsel may provide the extraordinary circumstances necessary to establish equitable tolling, under the circumstances of

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

this case, it does not.   See Holland, 130 S. Ct. at 2564 (serious instances of attorney misconduct may warrant equitable tolling).

First, Petitioner does not have a constitutional right to the assistance of counsel or the effective assistance of counsel for purposes of a state habeas proceeding.   See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) (right to appointed counsel extends to the first appeal of right, thus, no right to counsel on discretionary appeals or collateral attacks upon convictions); Coleman v. Thompson, 501 U.S. 722, 752 (1991) (precluding claim of ineffective assistance of counsel where there is no constitutional right to an attorney).   For this reason alone, Petitioner's argument for equitable tolling lacks merit.

Second, even if Petitioner could state such a claim, counsel's performance was effective.   In Mr. Kutchins' November 2011 letter to Petitioner, he stated:

> I was retained to investigate and then prepare a habeas petition on whatever ground appeared viable.  I looked for proof of a due process violation under Brady v. Maryland, but could not find sufficient evidence to proceed on that basis. So (as we discussed at the time) I went ahead and filed a petition based on the only ground legally available: 'newly discovered evidence' of your innocence.  The fact that, some time after you were convicted and sentenced, counsel for your co-defendants obtained a ballistics test that showed that their weapons did not fire the fatal shot is not in itself a basis for a Brady motion.  We would need to show—among other things—that the authorities had that information at some point when it would have made a difference in your case (meaning, generally, before you were convicted).  I know of no evidence proving that.

Respondent's Ex. I, Petitioner's July 6, 2012 pro se petition to California Supreme Court, Ex. D.

Counsel further explained that he did not "federalize" the actual innocence claim because it is not a claim that is recognized

15

**United States District Court**

For the Northern District of California

by the federal courts.   Id.

As discussed previously, under the circumstances of Petitioner's case, no Brady claim can be established.   Therefore, counsel correctly concluded that the evidence did not support a Brady claim and cannot be faulted for failing to assert a claim that has no basis in law.   See Juan H. v. Allen, 408 F.3d 1262, 1273 (9th Cir. 2005) (attorney need not file a motion he knows to be meritless on facts and the law); Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996).   Counsel also correctly concluded that a claim of actual innocence is not recognized by the federal courts.   See House v. Bell, 547 U.S. 518, 555 (2006) (leaving unresolved issue of whether a freestanding claim of actual innocence exists under federal law).

Therefore, Petitioner's argument that his counsel's ineffectiveness constitutes the extraordinary circumstances necessary to establish equitable tolling is meritless.

**4**

As noted by Respondent, Petitioner may be arguing that he is entitled to equitable tolling based on actual innocence.   This argument also lacks merit.

A claim of actual innocence, if proved, may serve as an equitable exception to the AEDPA statute of limitations.   McQuiggin v. Perkins, 133 S. Ct. 1924, 1933 (2013).   However, this exception applies to a severely confined category of cases in which new evidence shows "it is more likely than not that no reasonable juror would have convicted [the petitioner]."   Id. (citing Schlup v. Delo, 513 U.S. 298, 329 (1995)).

Petitioner's contention is that he was convicted on an

aiding and abetting theory dependent on the jury finding that co-defendant Bates was responsible for Ms. Stafford's death.  He concludes that the ballistics test showing that the bullet recovered from Ms. Stafford's body did not match the AK-47 found with Bates means that Bates did not kill Ms. Stafford, which exonerates himself.

However, Petitioner's theory mischaracterizes the prosecution's case and the evidence against him.  Mr. Kutchins, in his November 2011 letter to Petitioner, explained that the ballistics evidence would not have changed the outcome of Petitioner's case, as follows:

> Remember that the prosecutor's argument was that the people in the other vehicle (the SUV) were connected to you and your friends-so all of you could still have been convicted as "aiders and abettors" even if the fatal bullet was fired by the gunman in the SUV.  So the new ballistics test did not "automatically trigger the dismissal" of the murder charges against Bates, and it would not necessarily have resulted in an acquittal for you.  It might have been helpful to your case, if it had been known-but it was not.

Respondent's Ex. I, Petitioner's July 6, 2012 pro se petition to California Supreme Court, Ex. D (emphasis in original).

As Respondent points out, Petitioner's theory rests on three erroneous assumptions: (1) that his liability as an aider and abettor was based solely on the acts of Bates; (2) that the murder victim was wounded by a single gun; and (3) that all of the bullets which wounded the victim were recovered.

The jury heard the following evidence regarding the aiding and abetting charge against Petitioner.  Five weapons were recovered near the area where the police apprehended Petitioner, Hodges and Weaver or in one of their vehicles.  All the weapons had been fired.

17

The victims' Cadillac had gunshot holes in the door consistent with weapons used by Hodges and Bates.  Petitioner told police that he fired two shots at the victims' Cadillac and was found to have gunshot residue on his hand.  The jury specifically found that Petitioner was armed and personally used a weapon in the commission of the offenses.  The prosecutor argued that, if there was an SUV at the scene, the people in it were connected to Petitioner and his companions because there was evidence that all three vehicles were involved in the attack on the Cadillac.  Thus, Petitioner's liability as an aider and abettor was not derived or solely dependent on the actions of Bates.

Furthermore, the prosecutor argued that, if there was a second AK-47 that shot at the victims, it also was connected to Petitioner and his companions.  Therefore, even if the AK-47 connected to Bates could not be connected to the bullet fragment recovered from Ms. Stafford's body, Petitioner could still be liable as an aider and abettor of the shooter of the second AK-47.

Additionally, the evidence did not support the conclusion that there was only one murder weapon.  The cause of Ms. Stafford's death was "multiple gunshot wounds."  The evidence showed that several bullet fragments recovered from her body could have been attributable to any of the guns recovered.  Thus, in light of the fact that most of the bullets which caused Ms. Stafford's wounds could have been made by any of the guns recovered by the police, a ballistics test showing that one recovered gun did not match the weapon that fired the fatal shots, does not extinguish Petitioner's liability as an aider and abettor or establish his innocence.  In

18

short, the ballistics test, even viewed as Petitioner characterizes it, does not make it more likely than not that no reasonable juror would have convicted Petitioner of the charged crimes.

Thus, Petitioner has not satisfied the standard for showing actual innocence as enunciated in Schlup and McQuiggin. Because equitable estoppel does not apply to Petitioner's petition, it is untimely.  Accordingly, Respondent's motion to dismiss the petition as untimely is granted.

**B**

Respondent also argues that the petition is procedurally defaulted.

Generally, a federal court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991).  Procedural default under California's timeliness requirement is an independent and adequate state ground for denying review of a habeas claim. Walker v. Martin, 131 S. Ct. 1120, 1128 (2011).  The California Supreme Court denied as untimely Petitioner's 2011 and 2012 petitions, in which he raised the claims presented here.  See Resp.'s Exs. H, I. Consequently, Petitioner's claims are procedurally defaulted.

A federal court will only review a claim disposed of on an independent and adequate state ground if the petitioner shows either "cause and prejudice" or "miscarriage of justice." McClesky v. Zant, 499 U.S. 467, 494 (1991).  Under a "cause and prejudice" analysis, the petitioner must show (1) cause: that some objective factor

19

impeded efforts to raise the claim at the appropriate proceeding, and (2) prejudice: that the impediment worked to the petitioner's actual and substantial disadvantage, with errors of constitutional dimensions.  Id.  If the petitioner does not meet the standard for "cause and prejudice," a federal court may still review the claim if a "miscarriage of justice" occurred.  Sawyer v. Whitley, 505 U.S. 333, 339 (1992).  The "miscarriage of justice" exception only applies if the petitioner claims actual innocence.  See Coleman, 501 U.S. at 748.

To show cause, Petitioner again relies upon his claims of ineffective assistance of counsel and a Brady violation.  Petition at 16, 17.  As discussed previously, these claims lack merit. Petitioner also relies on his claim of actual innocence.  Petition at 18.  This claim also has been shown to be without merit.

Therefore, this Court is precluded from reviewing Petitioner's claims because he has not shown cause and prejudice, or a miscarriage of justice, to excuse his procedural default. Respondent's motion to dismiss based on procedural default is granted.

In his reply, Petitioner also argues that the new evidence shows that he is serving an "unauthorized sentence" because an aider and abettor cannot receive a longer sentence than the perpetrator and AEDPA's statutory limitations do not apply to this claim. Petitioner provides no authority for this contention nor does the Court know of any.  Therefore, this new claim, raised for the first time in his reply, is without merit.

20

**United States District Court**

For the Northern District of California

IV

In light of the fact that Respondent's motion to dismiss on the grounds of untimeliness and procedural default is granted, Petitioner's motion for discovery and for appointment of counsel is denied as moot.  Doc. #14.

V

For the foregoing reasons, Respondent's motion to dismiss the petition is GRANTED.  Doc. #9.  Further, a certificate of appealability will not issue because Petitioner has not made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Petitioner has not shown that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. 473, 478 (2000).

A separate judgment shall be entered in favor of Respondent.  The Clerk is directed to terminate any pending motions as moot and close the file.

IT IS SO ORDERED.

DATED    _10/02/2013_    _____

THELTON E. HENDERSON
United States District Judge

G:\PRO-SE\TEH\HC.13\Scott 13-0245-MTD Grant.wpd

21